[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Ryszard and Halina Pieniazek seeking review of the statement of compensation filed by the defendant regarding the acquisition by eminent domain of their property in the City of New Britain know as 48 and 48 R Beaver Street. The property contains approximately one-quarter of an acre and is bounded on the easterly side by Beaver Street for a distance of 66.6 feet more or less. The property is more particularly described in the complaint.
The parties stipulated that the date of the taking was October 13, 1989, that the sum of $228,000 (Two Hundred Twenty-Eight Thousand Dollars) was deposited by the defendant with the clerk of the Superior Court, and that this sum has been withdrawn by the plaintiffs.
New Britain is located in the approximate center of the State and it is served by an excellent highway system. It has had a high percentage of manufacturing employment and encourages commercial and industrial enterprises. Efforts continue to be made to revitalize the central business district and to renovate older housing stock. Beaver Street is in the central part of the city and is close to the central business district. The area contains both commercial and residential properties. The residential properties in the area are mostly multi-family dwellings. The buildings are old but many have been well maintained and upgraded. There has been some redevelopment in the area by a private developer. Beaver Street itself was described by one witness as one of the worst blocks in the city with several buildings having been declared unfit for human occupancy. The subject properties, on the other hand, were said by the same witness to have been well maintained and to have received "super" management. Beaver Street has been made a project of the Housing Site Development Agency and most of the buildings on it have been or will be renovated or CT Page 1703 demolished.
The subject property is in B-4 zone. This is the central business district zone and residential uses are permitted in a B-4 zone by special exception. The subject property was improved on the date of taking with two multi-family dwellings, a not uncommon use in the City of New Britain. These dwelling units were a legally permitted nonconforming use. Since the taking, the buildings have been demolished and they were not in existence at the time of the hearing.
The site of the subject property is one-quarter to one-half a mile from the central business district. It is generally level and it contains approximately 10,916 square feet of land area. All municipal and public utilities are available. Of the two buildings which were on the subject property at the time of the taking, the front building was a brick structure of three storeys with a full basement. It contained six apartments of five rooms each. It had central, oil-fired hot water heating for the ground floor apartments and gas heaters for the other apartments. Each floor was 2,292 square feet in area. The building was well-maintained and in good condition. The building to the rear was a wood frame, two-family building with asphalt siding. It contained a five room apartment on the first floor and a four room apartment on the second floor. Each floor had gas heat. The first floor was 1,025 square feet in area and the second floor was 510 square feet in area. There was also an unfinished basement. The building was well-maintained and in good condition.
The defendants did not themselves reside on the premises. All of the apartments were rented at the time of the take. One of the tenants was responsible for keeping watch over the property and for notifying the defendants when there was any difficulty or when any work needed to be done. In return for this service, the tenant paid a reduced rent. The plaintiff Ryszard Pieniazek did all of the maintenance and repair work on the premises himself except for electrical work. He spent two or three hours on the premises each day.
Thomas J. Ringrose, a qualified real estate appraiser, was called as an expert witness by the plaintiffs. He used both the income approach and the market approach in order to establish a fair market value for the property. He did not use the cost approach because of the age of the buildings. He found five sales of properties which CT Page 1704 had two residential buildings on one lot and which he believed were comparable to the subject property. He analyzed these sales in order to find for each one the price per room, per rental unit and per square foot of dwelling including land value. In his opinion, the two best methods for estimating value were the per room method and the per square foot method. The apartments on the subject premises had more rooms than most of the comparables and Ringrose adjusted for such factors as condition, size and number of rooms. He did not explain his adjustments in his report. He concluded that the fair market value of the subject property was $315,000 (Three Hundred Fifteen Thousand Dollars). Ringrose also concluded that the highest and best use of the subject property is the use which was being made of it by the plaintiffs.
The defendant called Angelo R. Canzonetti, a qualified real estate appraiser, as an expert witness. Canzonetti used both the direct sales comparison approach and the income approach in estimating the fair market value of the subject premises. He did not use the cost approach. He found and analyzed four sales of properties which in his opinion were comparable to the subject property. Each of the four had two residential buildings on one lot. He made adjustments for such factors as time, location and physical characteristics but these adjustments were not set out explicitly in his report. Canzonetti opined that the fair market value of the subject property was $240,000 (Two Hundred Forty Thousand Dollars). It was also his opinion that the highest and best use of the subject property was as the location of two multi-family dwellings.
The plaintiffs acquired the subject premises in November of 1983. Since that time, properties such as the subject premises in New Britain increased in value. By the time of the taking, the increase had slowed or come to a stop. Although the buildings had been taken down by the time of trial, the court was able to inspect the site. The general area is undergoing renovation and rehabilitation and the highest and best use for the site continues to be for multi-family dwellings.
A state referee sitting as a court on appeals in condemnations cases is charged with the duty of making an independent determination of value in light of all the circumstances, the evidence and his own general knowledge. The determination of the value of property depends finally upon the considered judgment of the CT Page 1705 referee.
Although the two buildings which existed on the subject premises had been demolished by the time of trial, pictures of the buildings were contained in each of the appraiser's reports and they were adequately described both in the reports and in testimony. Having reviewed the reports and having given due consideration to the testimony of all witnesses and all of the evidence, having seen the subject property and the general location as it presently exists, and relying upon my own knowledge of the elements establishing value, I find that the fair market value of the subject property at the time of taking was $245,000 (Two Hundred Forty-Five Thousand Dollars). It is concluded, therefore, that the statement of compensation for the taking of the property must be revised to state that $245,000 (Two Hundred Forty-Five Thousand Dollars) is the compensation to be paid for the taking. Judgment may enter for the plaintiffs for the deficiency of $17,000 (Seventeen Thousand Dollars) in addition to the sum of $228,000 (Two Hundred Twenty-Eight Thousand Dollars) which was deposited by the defendant and withdrawn by the plaintiffs. Upon receipt of proper notice by the defendant, it shall pay to the plaintiffs the amount of the deficiency, with interest on the deficiency from the date to taking to the date of payment, together with costs and an allowance of $1,200 (One Thousand Two Hundred Dollars) towards their appraisal fee.
GEORGE D. STOUGHTON, STATE TRIAL REFEREE